GUIDRY, Judge.
Plaintiff-appellee, John B. Doucet, filed suit against defendant-appellant, Ores Paul Seaux, seeking reimbursement for sums allegedly due in connection with the partial assignment of a coal mining lease. The trial court rendered judgment in favor of Doucet and against Seaux in the amount of $11,440.00. Defendant appeals.
FACTS
On March 3, 1984, John B. Doucet purchased a 14.22% interest in a coal mining lease from Cedar Bend Coal Company, Inc. of Alvin, Texas (hereafter Cedar). As consideration for the transfer of this interest Doucet paid Cedar $16,000 cash and gave his irrevocable letter of credit issued by the Rayne State Bank in the amount of $22,-000. On May 3, 1984, Doucet assigned to Seaux one-half of his interest in the coal mining venture. This assignment from Doucet to Seaux provides in pertinent part as follows:
“Assignee hereby does accept and assume an undivided one-half (½) of any and all obligations created by that Partial Assignment of Lease and all benefits, income, royalty, proceeds and rewards accruing to Assignor pursuant to the terms of said Partial Assignment of Lease and they shall inure to the benefit of Assignee and Assignor herein in the proportion of one-half each.”
This assignment was executed in consideration of the sum of $100.00 and other good and valuable consideration. The record reflects the other valuable consideration to be the agreement of the parties that Dou-cet would first recoup his $16,000.00 cash investment and thereafter the parties would share any profits or losses in equal proportions.
Presumably, Cedar was never made aware of the assignment executed by Dou-cet and Seaux as, in all matters concerning the coal mining venture, Cedar dealt solely with Doucet. The record reflects that Dou-cet was the sole payee on the following royalty checks received from Cedar: (1) $5,025.09; (2) $11,650.74; (3) $13,764.55; and, (4) $8,806.82. Doucet cashed the first three checks, however, the royalty check for $8,806.82 was never presented by Dou-cet for payment although the record indicates that, at the time of issuance, Cedar had funds on deposit sufficient to cover payment thereof.
Doucet instituted this suit demanding reimbursement from Seaux, contending that he suffered a loss of $36,895.87 in the coal mining venture and, as a result, Seaux was indebted to him for half of this amount.[1] *373 Seaux denied any indebtedness to Doucet urging that his potential liability under the assignment had been fully satisfied by the $39,247.20 Doucet received in royalty checks.
The record reflects that the letter of credit issued by the Rayne State Bank was ultimately called and Doucet was obligated to pay the bank the amount thereof plus the cost of issuance, i.e., $22,880.00.
At trial Doucet admitted receipt of the checks aforementioned, however, he stated that he never presented the last check of $8,806.82 for payment as a result of a joint decision made by him and Seaux. Additionally, Doucet testified that after receipt of the third check, he delivered the cash sum of $8,382.28 to Seaux’s office. According to Doucet, the money was placed in a paper sack and left with Seaux’s secretary with instructions that it should be delivered to Seaux. Seaux denied receiving any funds from Doucet and denied having counseled Doucet not to present the last check for payment.
In written reasons for judgment, the trial court concluded that Doucet did receive the checks aforementioned from Cedar and cashed all but the last check in the amount of $8,806.82. However, as to this last check, the trial court determined that the decision not to present same for payment was not a joint decision but one made solely by Doucet. The trial court also concluded that Seaux received no payment of any kind from Doucet. Finally, the trial court determined that Seaux was not responsible, under the agreement of the parties, for the other expenses, attorney’s fees, income taxes, life insurance premiums, etc., claimed by Doucet. The trial court then concluded as follows:
“Doucet’s initial investment amounted to Sixteen Thousand and No/100 ($16,-000.00) Dollars in cash and one irrevocable letter of credit in the amount of Twenty-Two Thousand and No/100 ($22,-000.00) Dollars for a term of 365 days. As was previously discussed, Doucet recouped his Sixteen Thousand and No/100 ($16,000.00) Dollar cash investment and only the Twenty-Two Thousand and No/100 ($22,000.00) Dollar letter of credit which was called by the State of West Virginia remains at issue herein regarding Doucet’s initial investment. The loss arising from the call on this letter of credit of Twenty-Two Thousand and No/100 ($22,000.00) Dollars was such an obligation as was contemplated by the agreement incurred by Doucet when the letter of credit was between the parties and therefore, Seaux owes one-half thereof. Accordingly, each party must bear one-half the loss, or Eleven Thousand and No/100 ($11,000.00) Dollars each; therefore, Seaux is liable to Dou-cet thereon in the sum of Eleven Thousand and No/100 ($11,000.00) Dollars.
Two (2) Four Hundred Forty and No/100 ($440.00) Dollar payments were made by Doucet for the cost of maintaining the Twenty-Two Thousand and No/100 ($22,-000.00) Dollar letter of credit from Rayne State Bank for two years (the letter of credit was renewed for one additional 365-day term). This expense being incidental to the principal obligation of the letter of credit, Seaux is liable for one-half thereof or $440.00.”
A trial court’s findings of fact should not be reversed on appellate review absent a showing of clear or manifest error. Our careful review of the record in this case reveals no such error. However, our review of the trial court’s judgment, in light of these established facts, reveals clear error in the determination that Seaux is liable to Doucet in the sum of $11,440.00.
Doucet received checks from Cedar total-ling $39,247.20. Any loss sustained as a result of Doucet’s failure to timely present the check of $8,806.82 for payment must be borne by Doucet. The trial court concluded that it was Doucet’s decision to withhold presenting such check for payment. Further, the record clearly shows that if that check had been timely presented for payment, it would have been honored. We conclude that, insofar as concerns Seaux, the record reflects receipt by Doucet of *374 funds from Cedar totalling $39,247.20. Of this amount Doucet was entitled to first recoup his $16,000.00 investment, which left a balance of $23,247.20. This remaining balance was more than sufficient to satisfy the liability of Seaux to Doucet for one-half of the letter of credit and the cost thereof. We will render judgment accordingly.
For these reasons, the judgment of the trial court is reversed and it is now ordered that plaintiffs suit be dismissed with prejudice and at his costs. All costs, both at the trial level and on appeal, are to be paid by plaintiff-appellee, John B. Doucet.
REVERSED AND RENDERED.

. This figure includes claims for expenses beyond the initial $38,000 investment, i.e., attor *373 ney’s fees, income taxes, life insurance premiums etc.